# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| Roger Festor, Steve McKim, and | § | |
| Leticia Cisneros, | § | |
|     Plaintiffs | § | |
| | § | |
| v. | § | Civil No.: SA:09-CV-0054-XR |
| | § | |
| Mary Wolf | § | |
|     Defendant | § | |
| | § | |

## Order

On this date, the Court considered Defendant Mary Wolf's Motion to Dismiss for Forum Non Conveniens (Docket Entry No. 5) and Plaintiffs' Response (Docket Entry No. 11) thereto. After careful consideration, the Court will deny the motion to dismiss on the basis of forum non conveniens.

## I. Background

The Defendant, Mary Wolf, owned a fractional interest in an unfinished property development, Mision La Serena, in Puerto Los Cabos, San Jose del Cabo, Baja California Sur, Mexico (the "Property"). The interest was for twelve consecutive periods starting in week fifty-one of 2008.[1] According to Wolf, a Mision La Serena agent named Dan West contacted her and informed her that the Plaintiffs, Roger Festor, Steve McKim, and Leticia Cisneros (the "Plaintiffs"),

---

[1] Docket Entry No. 4, Ex. A, ¶ 16.

wished to purchase her interest in the Property.[2] West forwarded a letter via facsimile to Wolf that included an Interim Agreement that both Wolf and the Plaintiffs subsequently signed. Wolf then sent the Interim Agreement back to Mision La Serena employees.[3]

On January 7, 2008, the parties signed a Letter of Intent prepared by Mision La Serena employees that set forth the terms for the assignment of Wolf's entire fractional ownership interest to the Plaintiffs.[4] After Wolf executed the Letter of Intent, she returned it to Mision La Serena without contacting the Plaintiffs.[5] The Plaintiffs claim that West, then acting as Wolf's agent, sent them the Letter of Intent.[6] Pursuant to the Letter of Intent, the Plaintiffs then wired the $722,384.00 purchase price to Defendant's account.[7]

Over the next several months Wolf and Plaintiff Festor exchanged several phone calls and documents regarding the transaction.[8] In those phone calls Wolf assured Festor that a deed would be forthcoming, and at Festor's request, Wolf mailed to Festor paperwork issued by Mision La Serena regarding the development.[9] The Plaintiffs also contacted the developer, who requested that

---

[2] *Id.* ¶ 15.

[3] Docket Entry No. 4, Ex. A, ¶ 16.

[4] *Id.*; Docket Entry No. 17, Ex. A.

[5] Docket Entry No. 4, Ex. A, ¶ 16.

[6] Docket Entry No. 17, ¶ 3.1.

[7] Docket Entry No. 4, Ex. A, ¶ 17.

[8] Docket Entry No. 4, Ex. A, ¶¶ 19-20, 23; Docket Entry No. 11, Ex. A.

[9] Docket Entry No. 4, Ex. A, ¶ 20.

the Plaintiffs provide them with an "executed agreement."[10] In November 2008, Festor then sent a letter to Wolf that included a Transaction Agreement.[11] Signed by Wolf and the Plaintiffs, the Transaction Agreement is distinguishable from the Letter of Intent only in that the former confirmed that Plaintiffs had wired the money to Defendant's account and stated that both parties intended to honor their remaining obligations under the Letter of Intent.[12] After signing the Transaction Agreement, Wolf returned it to Festor by using the self-addressed envelope that Festor sent with the letter and agreement.[13]

After the parties signed the Transaction Agreement, Wolf neither conveyed the deed to the fractional interest, nor returned the Plaintiffs' money. Plaintiffs also allege that around this time the Mision La Serena developer informed Wolf of the resort's precarious financial situation.[14] At present, the fractional interest in the Property is allegedly unusable because "the developer closed the Property and ceased operations."[15]

The Plaintiffs have filed this suit alleging breach of contract, common law fraud, statutory fraud/fraud in a real estate transaction, restitution, unjust enrichment, and violations under the Texas Deceptive Trade Practices

---

[10] Docket Entry No. 17, ¶ 3.3.

[11] Docket Entry No. 4, Ex. A, ¶ 21.

[12] Docket Entry No. 17, Ex. B.

[13] Docket Entry No. 4, Ex. A, ¶ 21.

[14] Docket Entry No. 17, ¶ 3.4.

[15] *Id.*

3

Act.[16] Defendant Wolf moves to dismiss on the basis of forum non conveniens.

## II. Analysis

### A. The Legal Standard for Forum Non Conveniens in an International Context

A federal court sitting in diversity applies the federal law of forum non conveniens in deciding a motion to dismiss. *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 793 (5th Cir. 2007). The "doctrine of forum non conveniens proceed[s] from [the] premise [that] ... [i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996)).

A forum non conveniens analysis in an international context has two steps. First, "the court must determine whether there exists an alternative forum." *DTEX*, 508 F.3d at 794. A foreign forum is available if "the entire case and all parties can come within the jurisdiction of that forum." *Id.* at 796. (quoting *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 835 (1993)). The alternative forum "is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the [sic] all the benefits of an American court." *DTEX*, 508 F.3d at 796. "The substantive law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice

---

[16] Docket Entry No. 17, ¶¶ 4.1-4.20.

there." *Id.* (quoting *Tjontveit v. Den Norske Bank ASA*, 997 F.Supp. 799, 805 (S.D.Tex. 1998)).

Second, if an alternative forum is both available and adequate, a court must determine which forum is best suited to the litigation. *DTEX*, 508 F.3d at 794. In performing this second step, a court must consider whether "certain private and public interest factors weigh in favor of dismissal." *Id.* Private interest factors include:

> (i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of [the] premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive . . . enforceability of judgment[; and whether] the plaintiff [has sought to] "vex," "harass," or "oppress" the defendant.

*Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

Should the private interest factors weigh against dismissal, a court will consider the public interest factors. *Gonzalez v. Chrysler Corp.*, 301 F.3d 377 (5th Cir. 2002) (citing *Baumgart*, 981 F.2d at 837). The "public interest" factors include:

> (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having a [sic] the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.

*DTEX*, 508 F.3d at 794. If these factors weigh in the movant's favor, the court may dismiss the case. *Id.*

The court must bear in mind that "the ultimate inquiry is [to locate the trial] where [it] will best serve the convenience of the parties and the interests of justice." *Id.* Defendants bear the burden of proof on all elements of the forum non conveniens analysis. *Id.* (citing *In re Ford Motor Co., Bridgestone/Firestone North American Tire*, 344 F.3d 648, 652 (7th Cir. 2003)). The Supreme Court has held that a moving defendant need not submit overly detailed affidavits to carry its burden, but it "must provide enough information to enable the district court to balance the parties['] interests." *Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1379-80 (5th Cir. 1988) (citing *Piper Aircraft v. Reyno*, 454 U.S.235, 258 (1981)).[17] Ordinarily a strong favorable presumption is applied to the plaintiff's choice of forum. *DTEX*, 508 F.3d at 795. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.*

**B. The Adequacy and Availability of the Alternative Forum**

Both parties submitted affidavits from Mexican legal experts addressing the adequacy and availability of the forum. Wolf's legal expert, Carlos Hernandez-Ojeda, argued that Mexican courts would be available to adjudicate the Plaintiffs' claims because the real property identified in the contract, Mision La Serena, is located in Mexico.[18] Under Mexico's Foreign Investment Law,

---

[17] The Supreme Court has not explained how much detail by a moving defendant is required. The necessary detail will likely depend upon the particular facts and issues of each case. *Camejo*, 838 F.2d at 1380 n. 17.

[18] Docket Entry No. 5, Ex. A, ¶¶ 7, 9.

6

foreign nationals can only invest in properties like Mision La Serena by using a special trust-like mechanism called fideicomiso.[19] Hernandez-Ojeda added that Mexican courts were an adequate forum because they allowed non-resident Americans to litigate contract breach claims, civil fraud, and restitution "in appropriate circumstances."[20]

By contrast, the Plaintiffs' expert, Rene Cacheaux, argued that Mexican courts were not available fora for the adjudication of time-sharing rights because of their unique nature as fractional property rights, which are not recognized under Mexican law.[21] Such rights would be treated as personal or contractual rights instead of as real property rights.[22] Questioning Mexico's personal jurisdiction over the parties, Cacheaux added that Mexican law contained no concept similar or equivalent to "minimum contacts."[23] He also stated that Mexican courts were inadequate because Mexican law failed to recognize common-law fraud, fraud in a real estate transaction in a "civil litigation

---

[19] *Id.* ¶ 8. A fideicomiso is a property-ownership arrangement complying with Article 27 of the Mexican Constitution under which a Mexican Bank Trust obtains legal title to a piece of real property within a prohibited zone, and a foreigner, as the beneficiary of the trust, enjoys the beneficial interest in the property, including all the usual rights of ownership. *Gale v. Carnite*, 559 F.3d 359, 361n. 2 (5th Cir. 2009).

[20] *Id.* ¶ 11.

[21] Docket Entry No. 11, Ex. D, ¶ 2.10.

[22] *Id.* Cacheaux also questions the opinion of Wolf's legal expert that the present cause of action was directly related to the property itself and therefore implicated fideicomiso. He argues that the subject matter of the litigation is not the trust itself, but the parties' transaction that assigned the trust. *Id.* ¶ 5.5.

[23] *Id.* ¶¶ 4.1, 4.3.

context," and the Texas Deceptive Trade Practices Act.[24] Remedies such as punitive damages, considered against Mexican public policy, are also not recognized by the Mexican legal system.[25]

The affidavits, motion, and motion response demonstrate that Mexico's availability as a legal forum remains in question. Personal jurisdiction also remains unsettled in Baja California Sur since neither party is a resident or domiciliary of Mexico or subject to the jurisdiction thereof. *Quintero v. Klaveness Ship Lines*, 914 F.2d 717 (5th Cir. 1990). Since Defendant's assertion that Mexico is an available forum remains in question, Defendant has failed to carry her burden of persuasion. *See Camejo*, 838 F.2d at 1380.

In contrast to availability, Mexico appears to be an adequate forum. Wolf's expert points out that Mexico recognizes breach of contract, civil fraud, and restitution as causes of action. Cacheaux's attempt to distinguish civil fraud from common law fraud and fraud in a real estate transaction fails to demonstrate that the Plaintiffs are left without a remedy or access to basic justice. *DTEX*, 508 F.3d at 796. Thus, although the remedies might be somewhat different, the Plaintiffs are not left without a remedy altogether.[26]

---

[24] *Id.* ¶ 6.1.

[25] *Id.*

[26] Mexico's rejection of punitive damages as against public policy and lack of an equivalent to the Texas Deceptive Trade Practices Act does not necessarily result in a finding that Baja California Sur is an inadequate forum. Indeed, adequacy does not require that the alternative forum provide the same relief as an American court. *DTEX*, 508 F.3d at 796. In *Gonzalez*, 301 F.3d at 380-82, for example, "the plaintiff argued that the facts that Mexican law did not recognize strict liability and capped damages at approximately $2,500 made the Mexican courts inadequate." *DTEX*, 508 F.3d at 797. The court found that "Mexico, as a sovereign nation, has made a deliberate [policy] choice in providing a specific remedy for this

As noted, the availability of Mexico as an adequate forum remains open to question. However, the Court will presume that Mexico is an available and adequate forum and consider the remaining factors.

## C. The Private Interest Factors

### 1. Relative Ease of Access to Sources of Proof

Wolf asserts that the private interest factors would favor dismissal since Mexico would be a better forum given that "all of the plaintiffs' claims rest upon the factual and legal assertion that the defendant did not do what she promised to do [in the contract] and that [Mision La Serena] had ceased operations."[27] Wolf asserts that her own actions or omissions related to the Property, Mision La Serena's property developer, and documented evidence related to the Property, would be more accessible in Mexico.[28] The Plaintiffs, on the other hand, argue that their "claims arise out of conduct that occurred in the United States."[29]

Based on the parties' affidavits, Defendant's motion, Plaintiffs' response to the motion, and Defendant's Rule 26(a) Disclosures (Docket Entry No. 15), access to proof weighs in favor of denying a dismissal for forum non conveniens. The center of the dispute lies in the actions or omissions by Wolf in regards to

---

tort cause of action. It would be inappropriate-even patronizing-for us to denounce this legitimate policy choice . . . ." *Id.* (citation omitted). Moreover, other courts have held that a foreign forum's lack of an equivalent to the Texas Deceptive Trade Practices Act does not make that forum inadequate. *DTEX*, 508 F.3d at 797.

[27] Docket Entry No. 5, ¶ 8a.

[28] *Id.*

[29] Docket Entry No. 11, ¶ 6.2.

9

her obligations under the Letter of Intent and the Transaction Agreement. Defendant also submits the Fractional Ownership Rights Agreement as a document in support of her claims.[30] In all, these documents are readily accessible within the United States and thus weigh against denying the motion to dismiss on the basis of forum non conveniens.[31]

Additionally, Defendant's Rule 26(a) disclosures of persons with discoverable information include only the parties to the Letter of Intent and Transaction Agreement, and the Defendant's husband, Douglas Wolf.[32] Additional people who might have discoverable information but who were not included under the Rule 26(a) disclosures include Mision La Serena Sales Representative Dan West and the property developer. Wolf states in her affidavit that West contacted her about the purchasers' interest in her property.[33] Wolf also provides proof of this correspondence with documentation in the motion.[34] The documentation, however, fails to indicate if West played any role beyond what is demonstrated by the proof already placed before this Court.[35] The property developer's representations to the Defendant regarding the financial state of the property may also be an important piece of evidence.

---

[30] Docket Entry No. 15.

[31] *See* Docket Entry No.17, Ex. A-B.

[32] Docket Entry No. 15.

[33] Docket Entry No. 4, ¶ 15.

[34] Docket Entry No. 4, Ex. A.

[35] *See, e.g.*, Docket Entry No. 11, Ex. A-C; and Docket Entry No. 17, Ex. A-B; Docket Entry No. 4.

Yet, based on the documentation proffered by both parties and the absence of West and the property developer from the Defendant's Rule 26(a) disclosures, this Court can reasonably conclude that neither West nor the developer will be dispositive to a determination of the ease of access to proof and therefore do not weight this factor so as to warrant dismissal. Moreover, the signatories to the transaction are within the United States, and the Defendant has cited no specific documents that would not be available for discovery within the United States. Thus, the relative ease of access to evidence within the United States slightly favors denying the motion to dismiss on the basis of forum non conveniens.

**2. Compulsory Process for Attendance and Cost of Attendance**

The availability of compulsory process for attendance of unwilling witnesses weighs against dismissal. As noted above, Wolf has not specifically identified any parties in Mexico that would fall outside this court's ability to subject them to process. Moreover, the parties to this litigation reside in the United States. Still, Wolf asserts that requiring willing witnesses from Mexico to participate in a trial in San Antonio would be burdensome.[36] Yet, the Defendant fails to identify any key party or nonparty witnesses that would be so burdened. Given that Wolf argues that Mexico would be a better forum to adjudicate this matter, the necessary detail favoring this motion should include such witnesses in Mexico in order for the Defendant to carry her burden in a forum non conveniens analysis. *See Camejo*, 838 F.2d at 1380 n. 17. Moreover,

---

[36] Docket Entry No. 5, ¶ 8a.

11

the parties to this action are already so geographically separated, the costs of attendance of willing non-parties and unidentified witnesses is unlikely to be more burdensome in an American forum than in a Mexican forum. *See BBC Chartering & Logistic GMBH & Co. K.G. v. Siemens Wind Power A/S*, 546 F.Supp.2d 437, 447 (S.D. Tex. 2008) (citing *DTEX*, 508 F.3d at 800). Therefore, the availability of compulsory process for the attendance of unwilling witnesses favors denying the motion to dismiss for forum non conveniens.

### 3. View of the Premises

A view of the premises would undoubtedly be unavailable from an American forum. In determining whether Mision La Serena has indeed ceased operations, a view of the premises would be helpful. Yet, given that the subject matter of the dispute between the parties centers almost entirely on actions or omissions taken by the seller, and the majority, if not all, of this dispute could be resolved without determining the state of operations of Mision La Serena, a view of the premises weighs only slightly in favor of dismissal.

### 4. Other Practical Problems

Other practical problems such as enforceability of the judgment neither weigh in favor of or against dismissal for forum non conveniens. The Defendant argues that "[a]bsent some material defect in the foreign proceedings, such as lack of jurisdiction over the person or the subject matter, the judgment from a Mexican court would be enforceable in Virginia under that state's version of the

Uniform Foreign Money Judgment Recognition Act."[37] However, a Texas or Virginia judgment would be equally enforceable in Virginia, the state of Wolf's residence. Wolf has not shown that any part of a judgment issued by a United States court on Plaintiffs' claims would need to be enforced in Mexico, and Plaintiffs are not seeking specific performance. Thus, this private factor neither favors nor opposes dismissal.

Since the private factors do not favor dismissal on the basis of forum non conveniens, we proceed to weigh the public factors.

### D. The Public Interest Factors

### 1. Administrative Difficulties

Neither side cites administrative difficulties such as court congestion as a relevant factor affecting the public interest. This factor is therefore neutral.

### 2. The Interests of the Local Forum

The second public interest factor, the local interest in having localized controversies resolved at home, also weighs against dismissal. Wolf's expert argues that since "the subject of the dispute involves investors from several jurisdictions, 'there is a local interest in having localized controversies decided at home.'"[38] Yet resolving this dispute does not necessarily involve determining the state of the real property that formed the basis of the fractional property interest in Mision La Serena. Instead, the affidavits submitted by both parties

---

[37] Docket Entry No. 5, ¶ 8b.

[38] Docket Entry No. 5, Ex. A, ¶ 9a (quoting *Gulf Oil*, 330 U.S. at 509).

13

suggest that the dispute centers on actions or omissions in the assignment of the fractional interest in the Letter of Intent and the Transaction Agreement. Although Mision La Serena parties were involved as interlocutors in the execution of the Letter of Intent, both the Letter of Intent and the Transaction Agreement were signed in the United States by American citizens domiciled in the United States. Likewise, the breach of contract and tort actions accrued as a result of actions or omissions that occurred in the United States between American citizens who were parties to agreements that were executed in the United States. Thus, this forum has a greater interest in deciding allegations made by Texas citizens against a Virginia citizen than a Mexican forum.

### 3. The Governing Law

Although Mexican fideicomiso law may be relevant to the nature of the property that was the subject of the contract, the facts offered by the parties in their affidavits suggest that fideicomiso law is unlikely to apply to the underlying claims in this case because the dispositive elements of this dispute are the actions or omissions related to the Letter of Intent and Transaction Agreement. *DTEX*, 508 F.3d at 802.

In a diversity action, this Court applies Texas choice of law rules. *See Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990). In choosing the governing law, Texas follows the "most significant relationship test" set out in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 and § 145. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *Gutierrez v. Collins*, 583 S.W.2d

312, 318 (Tex.1979). Section 6 of the Restatement sets out the following general factors relevant to the choice of law:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Torrington Co.*, 46 S.W.3d at 848 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971)).

These factors are applied through Restatement provisions that are more specific to the type of dispute involved. In a contract action, for example, where the parties did not designate a choice of law, Texas applies the Restatement (Second) of Conflict of Laws § 188. *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 233 (Tex. 2008). Section 188 provides that "an issue in contract [is] determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." *Id.* In making that decision, the court takes five contacts into account: (a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location of the subject matter, and (e) the domicile, place of incorporation, and place of business of the parties. *Id.*

Similar to a contract action, the Restatement also designates relevant contacts for consideration in a tort action including: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c)

15

the domicil[e], residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Torrington*, 46 S.W.3d at 848 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971)). The analysis "should not turn on the number of contacts, but more importantly on the qualitative nature of those contacts." *Gutierrez*, 583 S.W.2d at 319.

After arguing that the subject matter of the dispute would be a personal or contractual right, the Plaintiffs' expert contends that Mexican courts would not have jurisdiction over a "United States agreement, negotiated and executed between United States citizens residing in [the] United States."[39] Venue for such personal or contractual rights would be governed by Article 156, section IV in Baja California Sur's Code of Civil Procedure instead, which states that venue is proper in a cause of action over personal or contractual rights in "the court of the domicile of the defendant."[40]

In this case, the United States has the most significant relationship because of the high qualitative nature of American contacts to this case. Based on the Plaintiffs' First Amended Complaint, Defendant's motion and affidavits, and the Plaintiffs' response to the motion and affidavits, it appears that the alleged breach of contract and tortious acts occurred within the United States between American citizens domiciled in the United States. There is no

---

[39] Docket Entry No. 11, Ex. D, ¶ 1.3.

[40] Docket Entry No. 11, Ex. D, ¶ 1.3.

indication that Mexican law should govern the claims at issue. Thus, under Texas's most significant relationship test, American law is likely to govern the merits issues, and this factor weighs against dismissal on the basis of forum non conveniens.

### 4. Application of Foreign Law

Although American law is likely to govern the merits, it appears that Mexican law will be relevant to collateral issues such as the nature of the property that is the subject of the contract. An American forum would nevertheless be capable of handling the difficulties posed by Mexican fideicomiso law should the court need to do so. Indeed, American forums have competently adjudicated matters involving Mexican fideicomiso property interests on other occasions. *See Gale v. Carnrite*, 559 F.3d 359 (5th Cir. 2009) (holding that a seller did not breach its contract by averring that there would be no tax liability incurred by the sale of a Baja California Sur condominium owned pursuant to fideicomiso law); *Brady v. Brown*, 51 F.3d 810 (9th Cir. 1995) (concluding that a district court's ordering parties to establish a fideicomiso so that the parties could transfer property interests was not a violation of Mexican law). Thus, the difficulties in application of foreign law does not weigh in favor of dismissal.

### 5. Burden of Jury Duty

The final factor, the unfairness of burdening citizens in an unrelated forum with jury duty weighs against dismissal. Imposing jury duty on Baja California Sur's citizens to adjudicate a contract or tort action between American

citizens domiciled in the United States would be unfair given that the only relationship Baja California Sur's citizens would have to the action is that the rights assigned by the American parties were to a beneficial interest in real property that is the situs of Mision La Serena.

### III. Conclusion

The analysis above demonstrates that the Defendant has failed to carry the burden of demonstrating that dismissal for forum non conveniens is warranted. Therefore, Defendant's motion to dismiss on the basis of forum non conveniens (docket no. 5) is DENIED.

It is so ORDERED.

SIGNED this 11th day of August, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE